IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| K.Y., a minor, et al.,<br><br>       *Plaintiffs*,<br><br>    v.<br><br>DISTRICT OF COLUMBIA, et al.,<br><br>       *Defendants*. | Case No. 24-cv-3056 |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION FOR CLASS CERTIFICATION AND APPOINTMENT OF CLASS COUNSEL**

Children are committed to the custody of the Department of Youth Rehabilitation Services ("DYRS") when a Court determines they are "in need of care or rehabilitation." D.C. Code § 16-2301(6). Upon commitment, it is thus the responsibility of the District of Columbia and Sam Abed, Director of DYRS (collectively "Defendants"), to place children in the "least restrictive settings necessary" to meet their rehabilitative needs. D.C. Code § 16-2301.02(9); *see also* D.C. Code § 16-2320(c)(2) (noting that commitment involves the "[t]ransfer of legal custody" to DYRS). Yet today, Defendants utterly fail to meet the rehabilitative needs of children in their care and custody. Defendants fail to conduct timely assessments or create treatment plans for children in their custody, and rather than sending children to placements that can meet their needs, Defendants hold them for months on end at a detention center. This practice of depriving children of rehabilitative care while holding them in a jail-like setting is harmful to children's mental, emotional, and physical wellbeing, and contrary to the purpose of the District's juvenile system— to "promote youth development" and "hold the government accountable for the provision of

reasonable rehabilitative services." D.C. Code § 16-2301.02(2), (7). Plaintiffs challenge these unlawful practices and file this Motion seeking certification of a proposed class of:

> Youth who are currently or will be (1) committed to the custody of the D.C. Department of Youth Rehabilitation Services; (2) detained at the Youth Services Center; and (3) awaiting placement.

The proposed class readily satisfies the requirements of Federal Rule of Civil Procedure 23(a). First, the class is numerous. As of this filing, 22 children are at the Youth Services Center awaiting placement by DYRS; throughout the course of a single year, around 100 children are in this situation.[2] The children who comprise the class are also vulnerable and indigent, characteristics that make individual suits unlikely and joinder more difficult, and the class includes future class members whose identities are unknown and thus impossible to join. Altogether, joinder is impracticable for the putative class members. Second, the class members' claims share common questions of fact and law, as they are all harmed by the same system-wide failure to assess children's needs, plan for their rehabilitative care, and place them in an appropriate rehabilitative setting, all of which results in extensions of their confinement in a jail-like setting. Third, the claims of the Named Plaintiffs are typical of the class, as they arise from the same unlawful conduct of Defendants and proceed on the same legal theory. Fourth, Plaintiffs have no adverse interests to the putative class members and have already begun to litigate the claims through qualified counsel, attorneys from the Public Defender Service for the District of Columbia ("PDS") and the American Civil Liberties Union for the District of Columbia ("ACLU-DC").

---

[2] From FY2017 to FY2019—the years for which data is available—between 96 and 140 children were newly committed to DYRS custody each year. DYRS, *Annual Report FY 2019*, at 15, https://dyrs.dc.gov/sites/default/files/dc/sites/dyrs/page_content/attachments/AnnualReportFY2019Web_0.pdf [hereinafter, "2019 Annual Report"].

Certification of Plaintiffs' proposed class is warranted under Rule 23(b)(2) because Defendants have "acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2). By failing to conduct timely assessments, develop individualized treatment plans, or identify placements that can provide the requisite rehabilitative care, Defendants are operating in a manner that is common to all proposed class members. Plaintiffs seek a single injunction requiring Defendants to meet the rehabilitative needs of the children committed to their care and custody, and cease their practice of extending the time children spend in restrictive, jail-like settings. In short, certifying the class will "generate common answers apt to drive the resolution of this litigation." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011) (internal quotation marks omitted).

Finally, Plaintiffs' counsel are highly experienced in handling class actions and other complex litigation involving incarcerated persons. Accordingly, this Court should appoint Named Plaintiffs' counsel as counsel for the class. *See* Fed. R. Civ. P. 23(g).

## FACTUAL BACKGROUND

The purpose of the District's juvenile system is rehabilitation, rather than punishment. The juvenile system was created to "treat children as children in all phases of their involvement," D.C. Code § 16-2301.02, and the D.C. Code even defines a "delinquent child" as a "child who has committed a delinquent act and *is in need of care or rehabilitation*." D.C. Code § 16-2301(6) (emphasis added). Indeed, every child who is committed to DYRS custody will return to the community by the age of 21, and it is the purpose of the system to ensure that they do so with the tools necessary to succeed.

DYRS is responsible for fulfilling this rehabilitative purpose for Plaintiffs and all class members. *See* D.C. Code § 16-2301(21) (defining "legal custody"); *id.* § 16-2301(6) (defining "delinquent child" as a child "in need of care or rehabilitation"); *In re P.S.*, 821 A.2d 905, 911 n. 11 (D.C. 2003) (noting that upon commitment of a child, DYRS is vested with "authority to make all decisions pertaining to the child's rehabilitation"). Indeed, DYRS was created to "[i]mprove the security, supervision, and rehabilitation services provided to committed and detained juvenile offenders." D.C. Code § 2-1515.02(a)(1). Its primary duties include operating a "juvenile justice system of care, rehabilitative service delivery, and security that meets the treatment needs of youth within the juvenile justice system[.]" *Id.* § 2-1515.04.

To fulfill this rehabilitative purpose, DYRS must secure—for all children committed to its custody—a placement that will provide the appropriate level of rehabilitative care and treatment depending on each child's needs. In order to identify the appropriate placement, DYRS must also asses the needs of the child and create a treatment plan. *See* D.C. Code §§ 16-2319(f); 2-1515.04(7). The law obliges DYRS to act swiftly when children are committed, requiring them to "complete an initial assessment of the child within 3 days" of commitment and "develop the individualized treatment plan within 14 days" of the initial assessment. *Id.* § 16-2319(f). DYRS employs an assessment (referred to as the Youth Level of Service, "YLS") to determine the need of a child committed to its care in order to assess what level of placement a child should be sent to. These placements range from high-level placements (which include secure facilities such as residential treatment centers and psychiatric residential treatment facilities), to medium-level placements (which include group homes in the community), to low-level placements (which include a family or guardian's home).

In recent years, Defendants' process for placing children committed to their custody in appropriate placements has completely broken down. Defendants entirely ignore the statutory requirement to complete an assessment within three days and develop an individualized treatment plan within fourteen days of that assessment. D.C. Code §§ 16-2319(f). They fail to timely complete the YLS assessment, if they complete it at all, and fail to act for extended periods of time after youth are committed. Whitney Louchheim, co-founder of Open City Advocates, has explained that she has "never seen" DYRS actually develop an individualized treatment plan for children in its custody. Ex. 1: Declaration of Whitney ¶ 12. Raymond Ngu, Legal Director of Open City Advocates, similarly has found that over the past year and a half, "weeks after commitment, a child still does not have a care coordinator assigned, and there's little to no plan around placement, let alone a broader treatment plan for what will happen after the placement program." Ex. 2: Declaration of Raymond Ngu ¶ 5; *see also* Ex. 3: Declaration of Hannah McElhinny ¶ 2 (noting that despite PDS attorneys' "persistent outreach to DYRS staff . . . our clients remained at YSC for months before being placed and receiving services"). As a result, children wait months for DYRS to place them in a placement that can provide the rehabilitative services and care a court has determined they need. *See* D.C. Code § 16-2301(6) (defining "delinquent child" as a "child who has committed a delinquent act and is in need of care or rehabilitation"). Indeed, both Named Plaintiffs were committed to DYRS months ago, yet none has even had a YLS assessment completed.

While awaiting placement, all class members are held at YSC, which is a detention center and not a substitute for a placement. Instead, it functions essentially as a youth jail, designed to house children pending adjudication or disposition. Children detained at YSC are "in the most restrictive, least rehabilitative setting possible–jail–for longer than necessary." Ex. 4: Declaration

of Hilary Cairns ¶ 7.  "Doors to each cell are locked, so youth cannot enter or exit their cell unless staff opens the door with a key."  Ex. 5: Declaration of Clare Kruger ¶ 3.  YSC is more restrictive than even high-level rehabilitative placements: "Even at New Beginnings—a secure setting as well—young people are able to earn higher levels of freedom of movement, home passes and other opportunities to practice more normal adolescent functioning; these opportunities are not available at YSC."  Ex. 4: Cairns Decl. ¶ 11.  Further, children at YSC do "not receive rehabilitative programming, regular or meaningful therapy, or treatment services."  Ex. 5: Kruger Decl. ¶ 9.  Children who are awaiting placement and held at YSC for extended periods of time do not receive the services necessary for rehabilitation—a shortfall that Defendant Sam Abed, Director of DYRS, has acknowledged.[3]  Children in awaiting placement status are also "left confused and unsure of their future."  Ex. 4: Cairns Decl. ¶ 8.  Clare Kruger, Staff Attorney with PDS's Juvenile Services Program, has "witnessed many children waiting for placement . . . decompensate, engage in self-harm, and experience suicidal ideations due to lengthy wait times at YSC."  Ex. 5: Kruger Decl. ¶ 10.

Further, the long period of time that children remain at YSC while awaiting placement extends the overall length of time they spend in restrictive, secure detention—a far cry from the juvenile system's directive to achieve the rehabilitative goals of the system in the "least restrictive settings necessary."  D.C. Code § 16-2301.02(9).  This is because children committed to DYRS custody must complete specific rehabilitative programming at their placements, but they cannot begin this programming until they arrive at the placement.  As a result, as Hilary Cairns, former

---

[3] Testimony of Sam Abed, *Public Hearing on Bill 25-826, the "Recidivism Reduction, Oversight, and Accountability for DYRS Act of 2024*," Council of the District of Columbia, Comm. of the Whole (Sept. 25, 2024), https://dc.granicus.com/MediaPlayer.php?view_id=2&clip_id=9003 (04:18:39).

6

Director of DYRS, has explained, given that "time spent at YSC does not count towards programming," these delays "effectively extend[] the length of their detention." Ex. 4: Cairns Decl. ¶¶ 9, 10; *see also* Ex. 1: Louchheim Decl. ¶ 19 ("None of the time a child spends at YSC counts towards this time period required for programming."). The time children spend at YSC is thus "referred to as 'dead time' because [children] are not programming, and they do not get credit for the time sitting at YSC." Ex. 6: Declaration of William Mount ¶ 11. Extending the time that children are in secure detention subjects Plaintiffs and putative class members to unconstitutional punishment and is harmful to their wellbeing and growth. It also "makes them less able to succeed in their rehabilitative programming," which, "in turn, makes them less able to succeed when they are inevitably returned to the community." Ex. 4: Cairns Decl. ¶ 12.

## LEGAL STANDARD

Federal Rule of Civil Procedure 23 authorizes federal courts to determine, "[a]t an early practicable time after a person sues" as a class representative, "whether to certify the action as a class action." Fed. R. Civ. P. 23(c)(1)(A). To obtain class certification, plaintiffs must satisfy the four Rule 23(a) requirements: numerosity, commonality, typicality, and adequacy of representation. Fed. R. Civ. P. 23(a)(1)-(4); *see Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 349 (2011). Plaintiffs must also show that the case meets the requirements of one of Rule 23(b)'s subsections. As relevant here, Rule 23(b)(2) provides that class certification is proper if "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2); *see Wal-Mart*, 564 U.S. at 360.

Upon certifying a class, the Court must also appoint class counsel. Fed. R. Civ. P. 23(g). To do so, the Court must consider: "(i) the work counsel has done in identifying or investigating

potential claims in the action; (ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action; (iii) counsel's knowledge of the applicable law; and (iv) the resources that counsel will commit to representing the class." Fed. R. Civ. P. 23(g)(1)(A). The Court "may also consider any other matter pertinent to counsel's ability to fairly and adequately represent the interests of the class." Fed. R. Civ. P. 23(g)(1)(B).

## ARGUMENT

### I. The Proposed Class Satisfies the Four Rule 23(a) Requirements.

#### A. The proposed class is so numerous that joinder is impracticable.

Plaintiffs satisfy the first requirement of Rule 23(a)(1) because "the class is so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). "There is no specific threshold that must be surpassed in order to satisfy the numerosity requirement; rather, the determination requires examination of the specific facts of each case and imposes no absolute limitations." *Taylor v. D.C. Water & Sewer Auth.*, 241 F.R.D. 33, 37 (D.D.C. 2007) (citation omitted); *accord Thorpe v. District of Columbia*, 303 F.R.D. 120, 144 (D.D.C. 2014). Nonetheless, courts in this District have generally concluded that "numerosity is satisfied when a proposed class has at least forty members." *Howard v. Liquidity Servs., Inc.*, 322 F.R.D. 103, 117 (D.D.C. 2017) (quoting *Coleman ex rel. Bunn v. District of Columbia*, 306 F.R.D. 68, 76 (D.D.C. 2015)).

The proposed class is sufficiently numerous both based on the forty-member benchmark and independently because joinder is impracticable in any event. Plaintiffs seek relief on behalf of all youth committed to DYRS custody, held at YSC, and awaiting placement. Publicly-available

8

data from the Office of Independent Juvenile Justice Facilities Oversight[4] shows that the class, as of October 26, 2024, is comprised of 22 children who are being held at YSC awaiting placement, which amounts to about 24 percent of the total population at YSC—a facility designed to detain children for short terms pre-adjudication.[5]  This number is a fraction of the total amount of children who will be at YSC and awaiting placement over time: there were 21 children awaiting placement on January 1, 2024, which rose to 41 children by February 13, 2024, then came down to 21 on July 29, 2024, back up to 36 on August 9, 2024, and was at 30 on September 19, 2024.[6]  Because of placements that occur (however belatedly) and result in transfers out of YSC, the smaller numbers are not necessarily subsets of the larger numbers—concretely, the 36 children at YSC awaiting placement on August 9 were not necessarily just the 21 from July 29 plus 13 more; some might have arrived and departed, making the total number over time higher that any one daily total.  Overall, the number of children newly committed to DYRS on an annual basis is large, ranging from 96 to 140 annually from 2017 to 2019 (the years in which this data is available).[7]

In addition to the size of the proposed class, joinder is impracticable.  "Demonstrating impracticability of joinder does not mandate that joinder of all parties be impossible—only that the difficulty or inconvenience of joining all members of the class make use of the class action appropriate."  *D.L. v. District of Columbia*, 302 F.R.D. 1, 11 (D.D.C. 2013) (citation omitted), *aff'd*, 860 F.3d 713 (D.C. Cir. 2017) (citation omitted).  Here, the "financial resources of class

---

[4] The Office of Independent Juvenile Justice Facilities Oversight was established to monitor DYRS secure facilities after the termination of *Jerry M., et al. v. D.C.  See* Press Release, Mayor Muriel Bowser, *Mayor Bowser Announces the End of Court Oversight of the DC Department of Youth Rehabilitation Services* (Dec. 1, 2020), https://dc.gov/release/mayor-bowser-announces-end-court-oversight-dc-department-youth-rehabilitation-services.

[5] Office of Independent Juv. Just. Facilities Oversight, *DYRS Secure Facilities Population Data Over Time*, https://oijjfo.dc.gov/page/dyrs-secure-facilities-population-data-over-time.

[6] *Id.*

[7] 2019 Annual Report, at 15.

9

members" and the "ability of claimants to institute individual suits" make joinder impracticable. *Coleman*, 306 F.R.D. at 80 (quoting Newburg on Class Actions § 3:12 (5th ed. 2014)). The entirety of the putative class are children, almost all of whom are indigent and are not well-positioned to bring an individual suit because of their age, detention status, and finances. *See D.L.*, 302 F.R.D. at 11 (finding that the numerosity requirement was met because putative class members are "indigent and unable to obtain legal services," and noting that they are particularly "young[]" and "vulnerable"). Youth committed to DYRS custody are detained at YSC and are represented by PDS and Criminal Justice Act Panel attorneys in delinquency matters and throughout commitment because they are "financially unable to obtain adequate representation." D.C. Code § 2-1602(a)(1).

Joinder is also inherently impracticable because of the unnamed, unknown future class members who will be committed to DYRS custody and awaiting placement while detained at YSC. The population of children who are committed to DYRS each year is vast: From 2017 to 2019—the years for which data is available—between 96 and 140 children were newly committed to DYRS custody each year.[8] Because "the class seeks prospective relief for future class members, whose identities are currently unknown and who are therefore impossible to join," the Court should find "the numerosity requirement of Rule 23(a)(1) satisfied." *D.L.*, 302 F.R.D. at 11; *see also, e.g.*, *Colo. Cross Disability Coal. v. Abercrombie & Fitch Co.*, 765 F.3d 1205, 1215 (10th Cir. 2014) ("[T]he fact that the class includes unknown, unnamed future members also weighs in favor of certification."). "Future members make joinder inherently impracticable because there is no way to know who they will be and the inherently transitory nature of the class members makes their joinder in a single, non-class suit impossible, since only a portion of the class will have

---

[8] 2019 Annual Report, at 15.

standing to bring their claims at any one time." *D.L.*, 302 F.R.D. at 11 (citation and internal quotation marks omitted).

Critically, "in assessing whether joinder [is] impracticable," "Rule 23(a) must be read liberally in the context of civil rights suits," such as in the case of "juveniles incarcerated in a state facility who challenge[] the conditions of their detention." *Coleman*, 306 F.R.D. at 80 (quoting *J.D. v. Nagin*, 255 F.R.D. 406, 414 (E.D. La. 2009)). When considered in this context alongside the size and characteristics of the putative class, joinder of the proposed class is inherently impracticable.

### B. The proposed class satisfies the commonality requirement.

The proposed class satisfies the second requirement, Rule 23(a)(2), as "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). To meet this requirement, the class members' claims "must depend upon a common contention" that is "capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart*, 564 U.S. at 350. This requirement is met if "a single aspect or feature of the claim is common to all proposed class members," *Bynum v. District of Columbia*, 214 F.R.D. 27, 33 (D.D.C. 2003). "Even a single common question will do," as long as that question has the capacity to yield an answer that drives litigation for the class as a whole. *Thorpe v. District of Columbia*, 303 F.R.D. 120, 145 (D.D.C. 2014).

Courts have consistently held that where "plaintiffs allege widespread wrongdoing by a defendant," as in civil rights cases challenging institutional wrongdoing, they can establish commonality notwithstanding individual factual variations by identifying "'a uniform policy or practice that affects all class members.'" *D.L.*, 302 F.R.D. at 12 (quoting *D.L. v. District of*

*Columbia*, 713 F.3d 120, 128 (D.C. Cir. 2013)); *see also R.I.L-R v. Johnson*, 80 F. Supp. 3d 164, 181 (D.D.C. 2015) ("As the D.C. Circuit recently explained, commonality is satisfied where there is a uniform policy or practice that affects all class members."); *Thorpe*, 303 F.R.D. at 145–46. Such suits "by their very nature often present common questions satisfying Rule 23(a)(2)." 7A Wright, Miller & Kane, Federal Practice & Procedure § 1763 (3d ed. 2005); *see also Parsons v. Ryan*, 754 F.3d 657, 682 (9th Cir. 2014) ("In a civil rights suit such as this one . . . commonality is satisfied where the lawsuit challenges a system-wide practice or policy that affects all of the putative class members. Under such circumstances, individual factual differences among class members pose no obstacle to commonality." (citation and internal quotation marks omitted)).

This case satisfies the commonality requirement because Defendants maintain a "system-wide policy or practice" of not conducting assessments or developing individualized treatment plans of children in a timely manner, and of holding children in a jail-like setting for months on end without purpose. All children committed to DYRS custody must be assessed and placed in rehabilitative settings according to their needs, and all class members are thus affected by DYRS's failings.

The following factual and legal questions, at least, are common to the class:

 (1) Whether Defendants have, by excessively delaying placements, violated their duty to provide rehabilitative care and treatment to children in its custody who are awaiting placement;

(2) Whether Defendants' excessive delays in assessing and developing plans for children in their custody violate DYRS's statutory command; and

(3) Whether Defendants violate the constitutional rights of the children in its custody by extending the length of their detention in secure jail-like settings and failing to provide rehabilitative services.

Each of these questions can be resolved as to the class as a whole, because they turn on Defendants' policies and practices affecting every single class member. Indeed, "[n]ot only do all class members present the same challenge to [DYRS's policies and practices], but there also is no evident variation among them concerning their ultimate entitlement to relief: if any person in the class has a meritorious claim, they all do." *J.D. v. Azar*, 925 F.3d 1291, 1321 (D.C. Cir. 2019).

Moreover, Defendants' violations have caused "common harm[s]" to putative class members. *D.L. v. District of Columbia*, 860 F.3d 713, 724 (D.C. Cir. 2017). Class members are being detained at YSC in lieu of rehabilitative placements that will allow them to work towards returning to the community. Thus, each class member experiences the same harm: deprivation of rehabilitative treatment that has been deemed appropriate by DYRS and Family Court, and psychological and physical harm as a result of extended periods of detention in a facility that was not designed for long-term residence.

### C. The Named Plaintiffs satisfy the typicality requirement.

Plaintiffs' claims are also "typical of the claims . . . of the class." Fed. R. Civ. P. 23(a)(3). The typicality requirement "ensures that the named plaintiffs are appropriate representatives of the class whose claims they wish to litigate." *Wal-Mart Stores*, 564 U.S. at 349. "A class representative satisfies the typicality requirement if the representative's claims are based on the same legal theory as the claims of the other class members and her injuries arise from the same course of conduct that gives rise to the other class members' claims." *Coleman*, 306 F.R.D. at 83 (internal quotation marks omitted). Under the rule's permissive standards, "[f]actual variations between the claims of class representatives and the claims of other class members do not negate typicality." *Bynum*, 214 F.R.D. at 34. "Rather, if the named plaintiffs' claims are based on the same legal theory as the claims of the other class members, it will suffice to show that the named

13

plaintiffs' injuries arise from the same course of conduct that gives rise to the other class members' claims." *Id.* at 35.

Here, the proposed class is comprised of children who are or will be held at YSC and awaiting placement. The Named Plaintiffs and putative class members have each suffered the same injury (extended detention at YSC and denial of services) based on the same government practice (failure to promptly place committed youth) and in violation of the same laws (the Due Process Clause of the Fifth Amendment, D.C. common law, and D.C. Code § 16-2319), making Plaintiffs' claims "sufficiently interrelated with the class claims to protect absent class members." *R.I.L-R v. Johnson*, 80 F. Supp. 3d 164, 181 (D.D.C. 2015).

### D. The Named Plaintiffs satisfy the adequacy requirement.

The final requirement of Rule 23(a) is that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). This requirement ensures that "the named representative must not have antagonistic or conflicting interests with the unnamed members of the class," and "the representative must appear able to vigorously prosecute the interests of the class through qualified counsel." *Twelve John Does v. District of Columbia*, 117 F.3d 571, 575 (D.C. Cir. 1997). Both requirements are met here.

As described above, Plaintiffs' claims are the same as those of the class and their interests are aligned with all putative class members. They do not seek any unique or additional benefit from this litigation that may make their interests different from or adverse to those of absent class members. Their aim is to secure relief that will ensure that all class members are afforded their statutory rights. Nor do Plaintiffs or Class Counsel seek financial gain at the cost of absent class members' rights. Indeed, this Rule 23(b)(2) class action seeks only injunctive, and not monetary,

relief. Accordingly, Plaintiffs lack any antagonism with the class, and their interests align squarely with the other proposed class members in obtaining injunctive relief.

Further, Named Plaintiffs are competent to represent the class. Adequacy "does not require either that the proposed class representatives have legal knowledge or a complete understanding of the representative's role in class litigation." *Garnett v. Zeilinger*, 301 F. Supp. 3d 199, 210 (D.D.C. 2018) (citation omitted). It requires only that the Named Plaintiffs have "some rudimentary knowledge of [their] role as . . . class representative[s] and [be] committed to serving in that role in litigation." *Id.* (citation omitted). Named Plaintiffs have demonstrated a commitment to their role as class representatives and have a sufficient "awareness of the facts of this case" to satisfy the adequacy factor. *Id.* at 211. Moreover, Named Plaintiffs' counsel has extensive experience litigating discrimination cases, issues related to detention, and/or class actions, and they will vigorously defend the interests of the class in this case. *See* Ex. 7: Declaration of Hanna Perry; Ex. 8: Declaration of Scott Michelman; *Howard v. Liquidity Servs. Inc.*, 322 F.R.D. 103, 135 (D.D.C. 2017) ("Particularly in complex cases, 'the qualifications of class counsel are generally more important in determining adequacy than those of the class representatives.'" (quoting *Harris v. Koenig*, 271 F.R.D. 383, 392 (D.D.C. 2010))).

## II.     The Proposed Class Satisfies the Requirements of Rule 23(b)(2).

Rule 23(b)(2) permits certification when "[t]he party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole." Fed. R. Civ. P. 23(b). To satisfy Rule 23(b)(2), "it is enough to show that a defendant has acted in a consistent manner toward members of the class so that his actions may be viewed as part of a pattern of activity." *Bynum*, 214 F.R.D. at 37 (internal citation omitted). As the Supreme Court

has explained, "[t]he key to the (b)(2) class is the indivisible nature of the injunctive or declaratory remedy warranted—the notion that the conduct is such that it can be enjoined or declared unlawful only as to all of the class members or as to none of them." *Wal-Mart*, 564 U.S. at 360 (quoting Richard A. Nagareda, *Class Certification in the Age of Aggregate Proof*, 84 N.Y.U. L. Rev. 97, 132 (2009)). When "a single injunction or declaratory judgment would provide relief to each member of the class," the class may be certified under (b)(2). *Id.* For this reason, civil rights class actions such as this one are the paradigmatic Rule 23(b)(2) suits, as "they seek classwide structural relief that would clearly redound equally to the benefit of each class member." *Marcera v. Chinlund*, 595 F.2d 1231, 1240 (2d Cir. 1979), *vacated on other grounds sub nom. Lombard v. Marcera*, 442 U.S. 915 (1979); *see also Johnson v. Gen. Motors Corp.*, 598 F.2d 432, 435 (5th Cir. 1979); *Elliot v. Weinberger*, 564 F.2d 1219, 1229 (9th Cir. 1977) (explaining that an action to enjoin allegedly unconstitutional government conduct is "the classic type of action envisioned by the drafters of Rule 23 to be brought under subdivision (b)(2)"), *aff'd in pertinent part sub nom. Califano v. Yamasaki*, 442 U.S. 682, 701 (1979); *Andre H. by Lula H. v. Ambach*, 104 F.R.D. 606, 613 (S.D.N.Y. 1985) (certifying class under Rule 23(b)(2) of "all current and future residents of the Spofford Juvenile Center who are handicapped and in need of special education and related services"); *Santiago v. City of Philadelphia*, 72 F.R.D. 619, 629 (E.D. Pa. 1976) (certifying Rule (23)(b)(2) class of juveniles "who are or will become subject to incarceration at the Youth Study Center, Philadelphia, Pennsylvania" and satisfy other requirements).

Here, Plaintiffs challenge the Defendants' failure to timely identify and secure placements for youth in DYRS custody. The Complaint seeks injunctive relief that would require the Defendants to meet the rehabilitative needs of children in their custody by identifying and providing youth with placements and ceasing their practice of needlessly extending children's time

in restrictive, secure settings. Thus, "certification of a (b)(2) class in this case is appropriate because the Defendant's conduct is 'such that it can be enjoined or declared unlawful only as to all of the class members or as to none of them.'" *D.L.*, 302 F.R.D. at 16 (quoting *Wal-Mart Stores*, 564 U.S. at 360).

### III.  The Court Should Designate Plaintiffs' Counsel as Class Counsel.

Upon certifying a class, the Court must also appoint class counsel. Fed. R. Civ. P. 23(g). To do so, the Court must consider: "(i) the work counsel has done in identifying or investigating potential claims in the action; (ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action; (iii) counsel's knowledge of the applicable law; and (iv) the resources that counsel will commit to representing the class." Fed. R. Civ. P. 23(g)(1)(A). The Court "may also consider any other matter pertinent to counsel's ability to fairly and adequately represent the interests of the class." Fed. R. Civ. P. 23(g)(1)(B).

Plaintiffs' counsel satisfies all four criteria. Plaintiffs are represented by attorneys from PDS and the ACLU-DC who have experience with class action litigation, expertise in representing detained persons and civil rights plaintiffs, and knowledge of the applicable law and practices of DYRS. *See* Ex: 7, Perry Decl.; Ex. 8: Michelman Decl. Both PDS and the ACLU-DC have a significant and lengthy history of affirmative civil rights class litigation, and PDS is well-versed in representing D.C. children in the delinquency system, including serving as class counsel in *Jerry M. v. District of Columbia*, No. 85-cv-1519 (D.C. Super. Ct. 1985) for 35 years. As reflected in the complaint, Plaintiffs' counsel has already devoted "substantial time and resources to identifying and investigating potential claims in the action," and will continue to do so. *Encinas v. J.J. Drywall Corp.*, 265 F.R.D. 3, 9 (D.D.C. 2010). Further, Plaintiffs' counsel is not seeking

attorneys' fees and has no interests adverse to putative class members in this litigation. Accordingly, Plaintiffs' counsel should be designated as counsel for the class.

## CONCLUSION

Plaintiffs respectfully request that the Court grant this Motion and enter an order certifying the proposed class under Rule 23(b)(2); certify Plaintiffs as Class Representatives; and appoint Plaintiffs' counsel from the Public Defender Service for the District of Columbia and the American Civil Liberties Union for the District of Columbia as Class Counsel.

Dated: October 28, 2024

Respectfully submitted,

/s/ Megan Yan
Megan Yan, D.C. Bar No. 1735334
Hanna Perry, D.C. Bar No. 90003756
Maya Chaudhuri, D.C. Bar No. 1779875

PUBLIC DEFENDER SERVICE FOR THE
DISTRICT OF COLUMBIA
633 3rd Street N.W.
Washington D.C. 20001
(202)-824-2201
myan@pdsdc.org
hperry@pdsdc.org
mchaudhuri@pdsdc.org

Scott Michelman, D.C. Bar No. 1006945
Aditi Shah*
AMERICAN CIVIL LIBERTIES UNION
FOUNDATION OF THE DISTRICT OF COLUMBIA
529 14th Street NW Suite 722
Washington, D.C. 20045
(202) 457-0800
smichelman@acludc.org
ashah@acludc.org

*Counsel for Plaintiffs*

\* Application for admission *pro hac vice* forthcoming; application for admission to the D.C. bar forthcoming; practice limited to federal courts