IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| K.Y., et al.,<br><br>    *Plaintiffs*,<br><br>v.<br><br>DISTRICT OF COLUMBIA, et al.,<br><br>    *Defendants*. | Civil Action No. 1:24-cv-03056 (CJN) |

**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO SEAL
HEARING ON PLAINTIFFS' MOTION FOR A PRELIMINARY INJUNCTION**

Open courts are a fundamental cornerstone of our judicial system and ensure the fairness and integrity of court proceedings by permitting the public to observe hearings, as well as promote the informed discussion of governmental affairs. Here, Defendants seek a complete and total closure of the hearing on the pending motion for a preliminary injunction in contravention of the longstanding presumption of openness. Furthermore, Defendants do so in a manner that ignores the public interest in the ongoing proceedings, is unnecessary and not narrowly tailored, and fails to properly consider alternatives—all constitutionally-required prerequisites to closure that have been soundly established by the Supreme Court.

At issue here is the preservation of the confidentiality of information related to minor children, including their identities and identifiable information, all of which has been filed under seal in the pleadings and constitutes a narrow and easily-identifiable set of information. Given that the vast majority of the facts and law raised in this litigation are a matter of public record, the manner in which confidentiality is preserved at the hearing should be narrowly tailored to the need. Therefore, Plaintiffs propose that parties approach the bench should the confidential information

of particular minor children—meaning the contents of their statutorily protected juvenile records or personally identifiable information—be implicated during the hearing to allow parties to address the matter off the public record, which would ensure that the hearing remains open to the public, while still protecting the children's privacy interests. Plaintiffs urge the Court to reject Defendants' request for a complete closure of the hearing, which is based on an exaggeration of the amount of confidential information at issue in the case. Instead, this Court should employ the proposed alternative to closure that preserves the confidentiality of named plaintiffs and protects public access to the hearing.

## Legal Standard

"[T]he presumption of openness may be overcome only by an overriding interest based on findings that closure is *essential* to preserve higher values and is narrowly tailored to serve that interest." *Dhiab v. Obama*, 70 F. Supp. 3d 465, 468 (D.D.C. 2014) (quoting *Press-Enterprise Co. v. Sup. Ct. Calif., Riverside Cnty.*, 464 U.S. 501, 502 (1984) (*Press-Enterprise I*)) (emphasis in original). Once a party has established an overriding interest in closure, the trial court must "narrowly tailor[]" the closure based on the individual facts of the case. *Globe Newspaper Co. v. Sup. Ct. Norfolk Cnty.*, 457 U.S. 596, 607–608 (1982). Additionally, the trial court must consider alternatives to closure. *Publicker Industries Inc., v. Cohen*, 733 F.2d 1059, 1072 (3d Cir. 1984); *see also Press-Enterprise I*, 464 U.S. at 511 ("Absent consideration of alternatives to closure, the trial court could not constitutionally close the [public proceeding]").

While the principles of public access to courts originally developed in the criminal context, they also extend to civil proceedings: "an examination of the authority on which the Supreme Court relied in these cases reveals that the public's right of access to civil trials and records is as well established as that of criminal proceedings and records." *Publicker Industries Inc., v. Cohen*,

733 F.2d 1059, 1066 (3d Cir. 1984); *see also National Ass'n of Waterfront Employers v. Chao*, 587 F. Supp. 2d 90, 98 (D.D.C. 2008) ("Courts have found a legitimate public interest in access to civil trials as well.") (citation omitted); *In re Guantanamo Bay Detainee Litigation*, 624 F. Supp. 2d 27, 36 (D.D.C. 2009) (collecting cases).

Courts have further held that the presumption of public access applies to preliminary injunction hearings. *See Publicker Indus., Inc. v. Cohen*, 733 F.2d 1059, 1063, 1070, 1073–74 (3d Cir. 1984) (describing the common law tradition of public access to civil trials and reversing the closure of a preliminary injunction hearing); *David K. v. Lane*, 839 F.2d 1265, 1276 (7th Cir. 1988) (finding no error with trial court's finding that "there was insufficient reason to compel either media restrictions or closure of the courtroom to the public" after plaintiffs' request for closure of preliminary injunction hearing in prison conditions litigation) (footnote omitted); *Dhiab v. Obama*, 70 F. Supp. 3d 465, 469 (D.D.C. 2014) (denying a motion to close a preliminary injunction hearing for national security reasons based on "'the presumption of openness' and the absence of any grounds that justify overcoming that presumption").

## Argument

I. **The Present Litigation is the Subject of Public Interest and Public Access Should be Protected.**

The public possesses a common law and First Amendment right of access to court proceedings, and courts have recognized that have affirmed that public access "plays a significant positive role in the functioning of the particular process in question." *In re Guantanamo Bay Detainee Litigation*, 630 F. Supp at 8 (quoting *Press-Enterprise Co. v. Sup. Ct.*, 478 U.S. 1, 8–9) (1986) (*Press-Enterprise II*). This presumption of openness is rooted in the protection of "the free discussion of governmental affairs." *Publicker Industries, Inc.* 733 F.2d at 1070 (quoting *Globe Newspaper Co.*, 457 U.S. at 604–05). Courts have long recognized that public access "permits the

3

public to participate in and serve as a check upon the judicial process—an essential component in our structure of self-government." *Id*.

Further, Courts have found that public interest in open proceedings merits heightened consideration when the public demonstrates an interest in a specific matter: "With such-longstanding and ongoing public interest at stake, it would be particularly egregious to bar the public from observing [the preliminary injunction hearing]." *Dhiab v. Obama*, 70 F. Supp. 3d 465, 468 (D.D.C. 2014); *see also see also In re Guantanamo Bay Detainee Litigation*, 624 F. Supp. 2d 27, 37 (D.D.C. 2009) (considering that public interest in "these proceedings specifically has been unwavering.").

The public, including the press, has demonstrated an interest in the present litigation, as well as Defendants' broader conduct. Defendants' failures to timely place putative class members in their custody have been the subject of extensive public discussion at D.C. Council hearings.[1] Furthermore, there has been significant media coverage, clearly establishing the press's interest. The coverage includes the instant litigation,[2] as well as Defendants' underlying actions.[3] Members

---

[1] *Joint Oversight Roundtable: Public Safety & Behavioral Health Services and Support for Youth*, Council of the District of Columbia, Comms. on Health, Judiciary & Youth Affairs (Dec. 13, 2023), available at https://www.youtube.com/watch?v=-Md8K6vFG2k; Fiscal Year 2023 Performance Oversight Hearing on The District of Columbia Department of Youth Rehabilitation Services (Feb. 15, 2024), https://dyrs.dc.gov/sites/default/files/dc/sites/dyrs/release_content/attachments/DYRS%20FY23%20Performance%20Oversight%20Hearing%20Testimony_2.15.24.pdf; *Public Hearing on the B25-0826 ROAD Act*, Council of the District of Columbia, Comm. of the Whole (Sep. 25, 2024), available at https://lims.dccouncil.gov/Hearings/hearings/496.

[2] Keith Alexander, *Lawsuit Alleges D.C. Youth Languish in City's Secure Detention Facilities*, Wash. Post (Oct. 28, 2024), https://www.washingtonpost.com/dc-md-va/2024/10/28/dyrs-lawsuit-dc-youth-languishing/.

[3] Meagan Flynn, *D.C. mayor, attorney general at odds over juvenile justice reform*, Wash. Post (Sep. 28, 2024), https://www.washingtonpost.com/dc-md-va/2024/09/28/dc-juvenile-crime/; Jenny Gathright & Colleen Grablick, *"Why is my child always on lockdown?": Confinement at D.C.'s Youth Jail Worries Parents, Advocates*, WAMU (July 24, 2023), https://wamu.org/story/23/07/24/confinement-at-dc-youth-jail-has-parents-worried/; Erick Flack & Jordan Fischer, *"We need some help," Mother, Judges Say System is Failing DC Kids Who Need Mental Health Treatment*, WUSA9 (July 12, 2024), https://www.wusa9.com/article/news/crime/mother-judges-say-system-is-failing-dc-kids-who-need-

4

of the media and advocates for adjudicated youth have expressed that they wish to attend. Preserving the constitutional right of public access is appropriate given the widespread public interest in this litigation and the specific interest in this hearing.

II.     **Closure is Unnecessary to Preserve an Overriding Interest and Not Narrowly Tailored.**

When there is a right of access, "the government may overcome that by demonstrating 'an overriding interest based on findings that closure is essential to preserve higher values and is narrowly tailored.'" *In re Guantanamo Bay Detainee Litigation*, 630 F. Supp. 2d 1, 9 (D.D.C. 2009) (quoting *Press-Enterprise I*, 464 U.S. at 510). The analysis must be based on the individual facts of the case, including consideration of what information is "already in the public record." *Globe Newspaper Co.*, 457 U.S. at 607–608 (footnote omitted). The closure is narrowly tailored when "no less restrictive alternative would serve the Government's purpose." *Detroit Free Press v. Ashcroft*, 303 F.3d 681, 708 (6th Cir. 2002) (internal quotation omitted).

Despite this high legal standard, Defendants seek the overly broad closure of the *entirety* of the preliminary injunction hearing and do so by misrepresenting the volume of confidential information at issue here. Defendants' sole basis for the closure is an interest in compliance with municipal statutes requiring the confidentiality of juvenile records and information contained

---

mental-health-treatment/65-f1d4540c-27b9-46d6-97de-ea627e432f77; Emily Davies, *D.C. Attorney General Targets Youth Services Agency in New Legislation*, Wash. Post (May 21, 2024), https://www.washingtonpost.com/dc-md-va/2024/05/21/dc-youth-crime-rehabilitation-legislation/; Christian Flores, *DYRS director reveals more positive drug results in DC juvenile detention center*, ABC7 News (May 21, 2024), https://wjla.com/news/local/dc-juvenile-detention-center-positive-drug-tests-fentanyl-department-youth-rehabilitation-sam-abed-violence-youth-services-center-injuries-safety-testimony-dmv; Ted Obert, *14 Fights, 8 Arrests, 4 Positive Drug Tests in Recent Days at D.C.'s Secure Youth Services Center*, NBC4 Washington (May 15, 2024), https://www.nbcwashington.com/investigations/14-fights-8-arrests-4-positive-drug-tests-in-recent-days-at-dcs-secure-youth-services-center/3616123/; Delia Goncalves, *Fentanyl Inside D.C. Youth Detention Center*, WUSA9 (Feb. 15, 2024), https://www.wusa9.com/article/news/local/dc/fentanyl-inside-dc-youth-detention-center/65-c7fad83a-450d-4145-9223-c691559658ff.

therein. ECF 21: Motion to Seal Hearing (citing §§ 16-2331(b), 16-2332(b), 16-2333(a), 16-2331(i), 16-2332(h), 16-2333(a), 16-2336).

Plaintiffs agree that the information about particular children that is governed by these statutes—namely, the contents of individual children's juvenile records and identifiable information of individual children—should remain confidential to protect the privacy interests of the children involved. But the protection of limited information does not justify the closure of an entire hearing. *Globe Newspaper Co.*, 457 U.S. at 607–608 (finding the protection of the information of minors to be "a compelling governmental interest" and then making clear that further analysis, not full closure, is required based on the individual facts of the case). Indeed, complete closure is unnecessary and not narrowly tailored given that the entirety of the law and the majority of the facts are already in the public record. As is appropriate given the common law and First Amendment right of access to judicial records, Plaintiffs have filed redacted versions of their pleadings on the public docket. *See* ECF 7, 7-1 to 7-13: Motion for Preliminary Injunction and Attachments (redacted); ECF 20: Reply to Opposition to Motion for Preliminary Injunction (redacted). The entirety of the Memorandum in Support of the Motion for Preliminary Injunction is filed on the public docket, only three out of ten exhibits attached to the Memorandum contain any redactions, and the Reply Support of the Motion for the Preliminary Injunction filed on the public docket contains the necessary redactions for identifiable information on only seven out of thirty-two pages. *Id.* Likewise, Defendants' Opposition to the Motion for Preliminary Injunction has minimal references to confidential information and their attached exhibits contain extensive facts that are not subject to the confidentiality statutes. ECF 18-1: Opposition to Motion for Preliminary Injunction. Throughout the pleadings, named plaintiffs are only referred to by their

initials and their identities would be similarly protected at the hearing. Thus, the vast majority of the disputed facts and law are a matter of public record.

Only a small portion of the record implicates the privacy interest that the Defendants raise. There is a narrow set of facts filed under seal that includes confidential records and information about the individual named plaintiffs. This specifically includes the identities of named plaintiffs, their next of friends, and references to their juvenile case records and social records, such as their individual placement recommendations. ECF 8, 18, 19: Sealed Motions for Leave to File Document Under Seal. Indeed, Defendants cite about 16 total lines of its 47-page Opposition as containing material that "relies on the individual circumstances of Plaintiffs' case and social histories in several different essential respects." ECF 21-1 at 3 (citing page numbers of Opposition that cite to Plaintiffs' case and social histories). Critically for the purposes of a public hearing, there are significant facts related to the named plaintiffs that are not identifiable and are appropriate to discuss on the public record, such as their respective lengths of stay at the Youth Services Center and DYRS's multiple failures to take timely action in their cases.

Furthermore, courts have routinely found that there are appropriate alternatives to closure when information essential to the proceeding is protected by statute. This occurs regularly in the national security context, where individuals face much more serious consequences for disclosure of classified information than in the present case. *E.g.*, *In re Guantanamo Bay Detainee Litigation*, 624 F. Supp. 2d 27, 37 (D.D.C. 2009). Defendants rely on the D.C. Circuit Court's decision not to release "recordings under seal in . . . [a]now-moot habeas corpus action" that involved forced-feeding of detained individuals based on national security justifications. *Dhiab v. Trump*, 852 F.3d 1087, 1091 (D.C. Cir. 2017). But in the same protracted litigation, the district court judge refused to seal a preliminary injunction hearing, reaffirming the importance of making individualized

analyses. *Dhiab v. Obama*, 70 F. Supp. 3d 465, 469 (D.D.C. 2014); *see also, e.g.*, *United States v. A.D.*, 28 F.3d 1353, 1355 (3d Cir. 1994) (holding that confidentiality provisions of Juvenile Delinquency Act did not require closed hearings and sealed records in all situations).

Rather than focus on the law and facts in dispute—which relate to the allegations of Defendants' systemic violation of the rights of children—Defendants signal that they intend to make this hearing about the underlying offenses and social histories of the two named Plaintiffs. *See generally* ECF 21: Motion to Seal Hearing. But the central focus of this hearing is not "the juvenile case and social history of Plaintiffs," *id.* at 4, as Defendants' minimal focus in its Opposition shows. *Id.* at 3 (citing only several pages of the Opposition that address the juvenile case and social history of Plaintiffs). Rather, the focus of this hearing is whether injunctive relief is warranted based on *systemic* violations of a proposed class of children in Defendants' custody.

Plaintiffs agree that the confidentiality of the discrete set of records and information involving the named plaintiffs' identities and identifiable information should be maintained, but it must be done in a manner that comports with the constitutional rights of the public. It is not necessary to close the entire hearing to the public—Defendants' only proposal—to achieve this goal and to do so is not the least restrictive approach. Rather, the Court should consider the narrowly tailored alternative to closure discussed below.

### III. An Alternative to Closure—Bench Conferences—Would Sufficiently Protect Confidential Information.

The Supreme Court has repeatedly held that consideration of alternatives to closure is mandatory. *Waller v. Georgia*, 467 U.S. 39, 48 (1984) ("[T]he trial court must consider reasonable alternatives to closing the proceeding"); *Presley v. Georgia*, 558 U.S. 209, 214 (2010); *see also Publicker Industries, Inc.*, 733 F.2d at 1074 (finding abuse of discretion when the trial court failed to consider alternatives to closure of preliminary injunction hearing). This step is such a critical

prerequisite to closure that trial courts are required to consider alternatives *sua sponte* even when no party is opposed to closure. *Presley*, 558 U.S. at 214.

Yet, Defendants move the Court to close the hearing without the mandatory consideration of alternatives. And they do so when Plaintiffs have proposed a reasonable and administrable alternative to closure: counsel may approach the bench and discuss any material that concerns identifiable plaintiffs' private information. This alternative is narrowly tailored and addresses the concerns raised by Defendants, specifically compliance with D.C. Code §§ 16-2331(b); 16-2332(b); 16-2333(a), which prohibit the disclosure of minors' confidential records and information. ECF 21: Motion to Seal Hearing at 2. Defendants reject this alternative by exaggerating the amount of confidential information at issue. Based on an individualized analysis of this litigation and the record thus far, it is indisputable that the majority of the facts and law in dispute can be discussed in open court.

## Conclusion

For the foregoing reasons, Plaintiffs respectfully request that the Court deny Defendants' Motion to Seal Hearing.

Date: December 11, 2024

Respectfully submitted,

/s/ Maya Chaudhuri
Megan Yan, D.C. Bar No. 1735334
Hanna Perry, D.C. Bar No. 90003756
Maya Chaudhuri, D.C. Bar No. 1779875

Public Defender Service for the
District of Columbia
633 3rd Street N.W.
Washington D.C. 20001
(202)-824-2201
myan@pdsdc.org
hperry@pdsdc.org
mchaudhuri@pdsdc.org

Scott Michelman, D.C. Bar No. 1006945
Aditi Shah*

American Civil Liberties Union Foundation of
the District of Columbia
529 14th Street NW, Suite 722
Washington, D.C. 20045
(202) 457-0800
smichelman@acludc.org
ashah@acludc.org

*Counsel for Plaintiffs*

*Admitted pro hac vice; not admitted in DC; practice limited to matters before federal courts and District of Columbia agencies.*

## CERTIFICATE OF SERVICE

I hereby certify that I caused a copy of the foregoing Plaintiffs' Opposition to Defendants' Motion to Seal Hearing to be served on Defendants. I further certify that I emailed a copy of the opposition to Defendants' counsel.

/s/ Maya Chaudhuri
Maya Chaudhuri