**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **K.Y.,** *et al.*, | |
|     **Plaintiffs,** | |
|     **v.** | **Civil Action No. 1:24-cv-03056-CJN** |
| **DISTRICT OF COLUMBIA,** *et al.*, | |
|     **Defendants.** | |

<u>**DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR**</u>
<u>**CLASS CERTIFICATION AND APPOINTMENT OF CLASS COUNSEL**</u>

# TABLE OF CONTENTS

TABLE OF CONTENTS ............................................................................................ i

TABLE OF AUTHORITIES ................................................................................. ii

INTRODUCTION ................................................................................................... 1

BACKGROUND ..................................................................................................... 2

Legal Standard ....................................................................................................... 7

Argument ................................................................................................................ 8

I.    Plaintiffs Have Not Satisfied The Class Action Pre-Requisites of Rule 23(a). ................. 8

    A.    Plaintiffs Have Not Met Their Burden To Establish Numerosity .......................... 9

    B.    Plaintiffs Cannot Establish Commonality Because They Have Not Identified Common Questions Capable of Resolving Any Issues on a Class Wide Basis.... 12

    C.    Plaintiffs Cannot Establish Typicality Because Their Claims Are Insufficiently Similar to the Other Putative Class Members ........................................................ 18

    D.    Plaintiffs Cannot Adequately Serve as Class Representatives Because They Lack Incentive To Protect the Interests of the Class ...................................................... 21

II.    Certification Is Improper Under Rule 23(b)(2) Because Plaintiffs Have Not Established That Class-Wide Injunctive Relief Can Address Their Alleged Injuries. ........................ 23

    A.    Plaintiffs' Requested Injunction Is Impermissibly Vague. ................................... 25

Conclusion ............................................................................................................. 30

# TABLE OF AUTHORITIES

Cases

*Am. Bar Ass'n v. FTC*, 636 F.3d 641 (D.C. Cir. 2011)..................................................................... 22

*Amgen Inc. v. Connecticut Ret. Plans & Tr. Funds*, 568 U.S. 455 (2013) ...................................... 8

*Atwell v. Gabow*, 248 F.R.D. 588 (D. Col. 2008) .......................................................................... 26

*Broussard v. Meineke Disc. Muffler Shops, Inc.*, 155 F.3d 331 (4th Cir. 1998) ......................... 18

*Brown v. District of Columbia*, 514 F.3d 1279 (D.C. Cir. 2008)) ................................................. 14

*Brown v. District of Columbia*, 928 F.3d 1070 (D.C. Cir. 2019) ..................................... 13, 18, 28

*Coleman ex rel. Bunn v. District of Columbia*, 306 FRD 68 (D.D.C. 2015)............................... 12

*Damus v. Nielsen*, 313 F. Supp. 3d 317 (D.D.C. 2018) ................................................................ 19

*Daskalea v. Wash. Humane Soc'y*, 275 F.R.D. 346 (D.D.C. 2011) .............................................. 14

*DL v. District of Columbia*, 302 F.RD. 1 (D.D.C. 2013)......................................................... 13, 14

*DL v. District of Columbia*, 713 F.3d 120 (D.C. Cir. 2013) ................................................... 15, 16

*DL v. District of Columbia*, 860 F.3d 713 (D.C. Cir. 2017) ......................................................... 21

*Feinman v. FBI*, 269 F.R.D. 44 (D.D.C. 2010) ............................................................................... 7

*Garcia v. Johanns*, 444 F.3d 625 (D.C. Cir. 2006)..................................................................... 8, 9

*Hinton v. District of Columbia*, 567 F. Supp. 3d 30 (D.D.C. 2021) .................................. 9, 21, 23

*Hoyte v. District of Columbia*, 325 F.R.D. 485 (D.D.C. 2017) ................................................. 7, 18

*In re Navy Chaplaincy*, 306 F.R.D. 33 (D.D.C. 2014) ................................................................. 27

*In re White*, 64 F.4th 302 (D.C. Cir. 2023)........................................................................... 13, 17

*Jordan v. District of Columbia*, 161 F. Supp. 3d 45 (D.D.C. 2016).............................................. 14

*Lewis v. Becerra*, 111 F.4th 65 (D.C. Cir. 2024)......................................................................... 22

*Lewis v. U.S. Parole Comm'n*, 2024 WL 3566135 (D.D.C. July 29, 2024).......................... 12, 14

*Littlewolf v. Hodel*, 681 F. Supp. 929 (D.D.C. 1988) ................................................................. 18

*Maldonado v. Ochsner Clinic Found.*, 493 F.3d 521 (5th Cir. 2007) ........................................... 24

*Schmidt v. Lessard*, 414 U.S. 473 (1974) ................................................................................. 25

*SEC v. Wash. Inv. Network*, 475 F.3d 392 (D.C. Cir. 2007) ..................................................... 25, 26

*Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*, 559 U.S. 393 (2010) ........................ 8

*Shook v. Bd. of Cnty. Comm'rs of Cnty. of El Paso*, 543 F.3d 597 (10th Cir. 2008) ................... 24

*Stewart v. Abraham*, 275 F.3d 220 (3d Cir. 2001) .................................................................. 18

*Taylor v. D.C. Water & Sewer Auth.*, 241 F.R.D. 33 (D.D.C. 2007) .......................................... 9

*Thorpe v. District of Columbia*, 303 F.R.D. 120 (D.D.C. 2014) ............................................ 13, 14

*Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011) ........................................................ passim

Statutes

D.C. Code § 2-1515.04 ........................................................................................................ 2

D.C. Code § 16-2319 ..................................................................................................... 5, 19

D.C. Code § 16-2323 ..................................................................................................... 5, 12

Rules

Fed. R. Civ. P. 23 .................................................................................................. 8, 9, 19, 24

Fed. R. Civ. P. 65 ..................................................................................................... 24, 25

## INTRODUCTION

The juvenile justice system in the District of Columbia is highly individualized, concerned with addressing each specific youth's rehabilitative needs, and aimed at ensuring youth do not reoffend, even when they have reached adulthood. Every step of the process depends on the individual circumstances of the particular youth—whether they are committed to the Department of Youth Rehabilitation Services (DYRS) in the first place, the length of that commitment, and the appropriate rehabilitative placement all vary from individual to individual. Once youth are committed to DYRS, the process of identifying and applying for placements and transferring youth from the Youth Services Center (YSC) must account for the individualized circumstance of each case, and most youth committed to DYRS will spend some amount of time at YSC awaiting transfer to a placement. The length of time spent awaiting placement depends on various factors, including but not limited to, the type of placement a particular youth requires (and in turn, the information and reports required by the specific facilities that can serve those needs), the location of the placement, the individual circumstances of the youth, ████████████ ███████████████████████████████████████████████████ ███████████████████████████████████████████████████ ██████████████████████████████████, and finally, the availability of immediate available bed space at an identified placement.

Plaintiffs are two such youth who were held at YSC awaiting placement, and the process and length of time that it took DYRS to place each was different and highly individualized, based on each plaintiff's different circumstance and placement needs. Plaintiffs' claims turn on allegations that they did not receive an initial assessment or treatment plan within the statutory timelines, and that their placement processes took too long, in violation of their constitutional rights. Now, these two Plaintiffs—who also bring a claim for preliminary injunctive relief—

seek to certify a single class that includes every single youth committed to DYRS custody, and held at YSC awaiting placement, now and in the future. This sweepingly broad class definition fails to meet any of the requirements of Rule 23.  Plaintiffs fail to show numerosity because they do not show that the proposed class would be so large as to render joinder impracticable, either now or in the future.  Plaintiffs also fail to show commonality because there is no significant evidence of a common practice which could be evaluated on a class-wide basis.  For typicality, Plaintiffs' claims are not representative of the entire proposed class, and lastly for adequacy they have not shown that they would be satisfactory class representatives, given their personal circumstances.  And, while Plaintiffs seek certification under Fed. R. Civ. P. 23(b)(2), they cannot meet that Rule's requirements either, because of the inherently individualized questions at the heart of the time between commitment and placement for every putative class member. Because they do not satisfy any of the requirements of class certification, Plaintiffs' Motion should be denied.

**BACKGROUND**

I.    **Juvenile Justice System in the District**

The complexities of the juvenile justice system in the District of Columbia, and the process of identifying appropriate placements for committed youth, are described in depth in Defendants' Opposition to Plaintiffs' Motion for a Preliminary Injunction [18-4] (PI Opp'n) at 2–10.  As relevant here, the Department of Youth Rehabilitation Services (DYRS) is the agency responsible for determining the placement needs of youth in its custody and facilitating youth placements.  D.C. Code § 2-1515.04(6).  Placement planning for committed youth begins as early as possible, even prior to commitment.  *See, e.g.,* PI Opp'n at 10 ████████████████ ██████████████████████████████████████████████████ In order to plan for placement, at minimum, DYRS typically needs a youth's psychological or psychoeducational

2

evaluation with an IQ score, a psychiatric evaluation, and education records. *Id.* at 7. The agency does not delay the placement process based on missing or incomplete initial assessments or case plans, but when available, this information is also used to facilitate the placement process. *Id.*

Many factors influence how quickly a committed youth can be placed, including the type of placement that is appropriate for the youth. There are three broad categories of placements: (1) community-based placements such as group homes and foster care; (2) Residential Treatment Centers (RTCs); and (3) Psychiatric Residential Treatment Facilities (PRTFs). *See id.* at 6. Higher-level residential placements like RTCs and PRTFs are primarily run by private organizations that DYRS contracts with to provide services to youth. *Id.* at 6–7. These higher-level placements typically require specific materials to accompany applications, such as psychological or psychoeducational evaluations that include an IQ score, and psychiatric evaluations. PI Opp'n, Ex. 1, Decl. of Tracie Velten (Velten Decl.) [18-6] ¶ 12. If assessments are missing, DYRS can sometimes negotiate with placements, but ultimately cannot require them to accept any given application. Additional factors that impact how quickly a youth can be placed include ████████████████████████████████████████████ ████████ or whether a placement that accepts a youth has bed space immediately available, *id.* at 33.

## II.    <u>Legislative Developments</u>

On December 17, 2024, the D.C. Council passed the Recidivism Reduction at DYRS Amendment Act of 2024 (ROAD Act). *See* Press Release, Off. of the Att'y Gen. for D.C., Attorney General Schwalb Applauds DC Council for Unanimously Passing ROAD Act (Dec. 17, 2024), *available at* https://oag.dc.gov/release/attorney-general-schwalb-applauds-dc-council; *see*

*also* B25-0826, Amendment in the Nature of a Substitute (Dec. 16, 2024) (ROAD Act), *available at* https://lims.dccouncil.gov/downloads/LIMS/55504/Meeting3/Amendment/B25-0826-Amendment1.pdf?Id=204043 (last visited Jan. 10, 2025).[1]  Currently awaiting transmission to the Mayor, if it becomes law, the ROAD Act will substantially change the requirements of DYRS in conducting initial assessments, case planning, and placement of committed youth. Several of these changes would directly impact Plaintiffs' claims in this case.

First, the ROAD Act requires that initial assessments for committed youth are completed using a "validated risk and needs assessment," such as the Youth Level of Services Inventory (YLS) that DYRS has been working to implement.  ROAD Act ¶¶ 164–65 (Sec. 4(b), amending D.C. Code § 16-2319(d)).  Under the new law, DYRS would have 10 days to complete initial assessments using the YLS, rather than 3 days under the current law.  *See id.*; *see also* Council of the District of Columbia Committee of the Whole Committee Report on Bill 25-826, *available at* https://lims.dccouncil.gov/downloads/LIMS/55504/Committee_Report/B25-0826-Committee_Report1.pdf?Id=202336, at 11 (noting the consensus of DYRS Director Sam Abed and "several experts on risk and needs assessment tools" consulted by the Council that such a tool reasonably requires 10 days to perform).

Second, the ROAD Act newly defines "individualized rehabilitation plan," including imposing specific requirements on what must be included in such a plan.  *See* ROAD Act ¶¶ 79–89 (Sec. 3(b), amending D.C. Code § 2-1515.01).  The Act further requires DYRS to conduct a "predisposition meeting" with several stakeholders, including the youth at risk of commitment, to review the youth's YLS and "begin the development of an individualized rehabilitation plan

---

[1]    The final text of the as-passed legislation is still being compiled and finalized for review by the Mayor and publication in the D.C. Register.  The Amendment in the Nature of a Substitute filed by Council Chairman Phil Mendelson captures the changes to the law relevant to this case.

for the child," *id.* ¶¶ 174–75, which must be completed and provided to the court and parties in the youth's delinquency case at least two days before the dispositional hearing, *id.* ¶¶ 180–183. This requirement would replace the current law's timeline for completing an (undefined) "individualized treatment plan within 14 days of completing the initial assessment" of a committed youth.  D.C. Code § 16-2319(f); *see* ROAD Act, ¶¶ 216–234 (Sec. 4(b), amending D.C. Code §§ 16-2319(e), (f), and (g)).

Finally as relevant here, the ROAD Act increases the frequency with which committed youth can petition the court in their delinquency matter to modify the dispositional order "on the grounds that [they are] not receiving appropriate services or level of placement," from once every six months under current law, D.C. Code § 16-2323(h)(1), to once every four months, ROAD Act ¶¶ 266–269 (Sec. 4(d), amending D.C. Code § 16-2323(h)(1)).  The ROAD Act as passed also expressly rejected a requirement that DYRS "provide services consistent with an individualized rehabilitation plan to a committed child within 30 days after entry of a dispositional order," citing challenges such as lack of bed space available at placements.  *See* Memorandum: Notice of Intent to Move Amendment in the Form of a Substitute from Phil Mendelson, Chairman, D.C. Council (Dec. 16, 2024), *available at* https://lims.dccouncil.gov/downloads/LIMS/55504/Meeting3/Amendment/B25-0826-Amendment1.pdf?Id=204043 (last visited Jan. 10, 2025).  The Council found that it was "not clear that [such a requirement] would [lead] to quicker placements" and that "other provisions in the bill" provide a mechanism for youth to challenge receiving inappropriate services or level of placement.  *Id.*

**III.**    **Plaintiffs K.Y. and D.J.**



6

██████████████████████████████████████████

██████████████████████████████████████████

████████████████████████████████████████

████████████████████████

### IV.    <u>Procedural History</u>

Plaintiffs filed the Complaint [1] on October 28, 2024, along with the Motion to Certify Class and Appoint Class Counsel [2].  Plaintiffs then filed a Motion for Preliminary Injunction [7] on October 30, 2024, which the District opposed on November 22, 2024.  The Court heard argument on Plaintiffs' motion for preliminary injunction on December 12, 2024, and took the motion under advisement.  On December 17, 2024, after both named Plaintiffs had been transferred to their placements, Plaintiffs moved to hold the preliminary injunction in abeyance pending the Court's resolution of the motion for class certification [25], which the Court granted the same day.

### LEGAL STANDARD

Federal Rule of Civil Procedure 23 sets out the requirements for class certification.  A class action is "an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only."  *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 348 (2011) (quoting *Califano v. Yamasaki*, 442 U.S. 682, 700–701 (1979)).  Thus, a class "may only be certified if the trial court is satisfied, after a rigorous analysis, that the prerequisites [for class certification] have been satisfied."  *Feinman v. FBI*, 269 F.R.D. 44, 49–50 (D.D.C. 2010) (quoting *Gen. Tel. Co. of the Sw. v. Falcon*, 457 U.S. 147, 161 (1982)).  The plaintiff bears the burden of persuasion to show each and every requirement of Rule 23 has been met, generally by a preponderance of the evidence.  *Hoyte v. District of Columbia*, 325 F.R.D. 485, 491 (D.D.C. 2017).

First, the plaintiff must meet all four requirements of Rule 23(a) by showing that: (1) the proposed class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.  Fed. R. Civ. P. 23(a).

Second, if the plaintiff can meet all the requirements of Rule 23(a), she must then show certification is warranted under one of the three subparts of Rule 23(b).  *Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*, 559 U.S. 393, 398 (2010); *Garcia v. Johanns*, 444 F.3d 625, 631 n.6 (D.C. Cir. 2006).  As relevant here, Rule 23(b)(2) permits certification of a class seeking declaratory or injunctive relief only upon a showing that "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole."  Fed. R. Civ. P. 23(b)(2).

Although analytically distinct from the issue of class certification, courts may consider the underlying merits on a motion for class certification "to the extent—but only to the extent—that they are relevant to determining whether the Rule 23 prerequisites for class certification are satisfied."  *Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*, 568 U.S. 455, 466 (2013).

## ARGUMENT

**I.**      <u>**Plaintiffs Have Not Satisfied The Class Action Pre-Requisites of Rule 23(a).**</u>

Plaintiffs' motion for class certification seeks to certify the following class:

> Youth who are currently or will be (1) committed to the custody of the D.C. Department of Youth Rehabilitation Services; (2) detained at the Youth Services Center; and (3) awaiting placement.

Pls.' Mem. Supp. Mot. Class Cert. (Pls.' Mem.) [2-1] at 2.  However, Plaintiffs cannot demonstrate that their proposed class definition satisfies any of Rule 23(a)'s factors.  *See* Fed. R.

Civ. P. 23(a). As failure to demonstrate even one Rule 23(a) factor is fatal to certification, Plaintiffs' motion should be denied. *See Garcia v. Johanns*, 444 F.3d 625, 631 (D.C. Cir. 2006).

### A.    Plaintiffs Have Not Met Their Burden To Establish Numerosity.

Plaintiffs have not established numerosity. Numerosity requires that the class be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). "[A] plaintiff must support its assertions as to the number of class members with an evidentiary basis from which the Court may then 'draw reasonable inferences from the facts presented to find the requisite numerosity.'" *Hinton v. District of Columbia*, 567 F. Supp. 3d 30, 52 (D.D.C. 2021) (quoting *McCuin v. Sec'y of Health & Hum. Servs.*, 817 F.2d 161, 167 (1st Cir. 1987)). In other words, Plaintiffs must "prove that there are *in fact* sufficiently numerous parties . . . ." *Wal-Mart Stores*, 564 U.S. at 350 (emphasis in original). While "there is no specific threshold" for numerosity, courts typically find "that a class of at least forty members is sufficiently large to meet this requirement." *Taylor v. D.C. Water & Sewer Auth.*, 241 F.R.D. 33, 37 (D.D.C. 2007). Plaintiffs assert that they have met this requirement "both based on the forty-member benchmark and independently because joinder is impracticable in any event." Pls.' Mem. at 8. They have not.

First, even by Plaintiffs' own acknowledgement, "the [putative] class, as of October 26, 2024, is comprised of 22" individuals, *id.* at 9—barely more than halfway to the "forty-member benchmark."[2] Plaintiffs attempt to gloss over this fact by suggesting that "[t]his number is a fraction of the total . . . who will be at YSC and awaiting placement over time," but they do not

---

[2]    According to the same source Plaintiffs rely on in their motion, as of the date of filing, currently there are 25 total committed youth at the Youth Services Center. *See* Off. of Indep. Juv. Just. Facilities Oversight, *DYRS Secure Facilities Population Data Over Time*, https://oijjfo.dc.gov/page/dyrs-secure-facilities-population-data-over-time (last visited January 10, 2025).

provide evidence to support what fraction of the total that might be, or how many youth may be at YSC and awaiting placement over some undefined period of time.  *Id.*  Ultimately, Plaintiffs point to annual commitment statistics from over five years ago to handwave their class size to "96 to 140."  *Id.*  This is insufficient.

But perhaps more importantly, those estimates, even if accurate, are untethered to the claims in Plaintiffs' Complaint.  In other words, the number of youth who are committed to DYRS, housed at YSC, and awaiting placement at any given time includes youth who received timely assessments under D.C. Code § 16-2319(f), *see* Grimmett Decl. ¶ 15 █████████████

████████████████████████████████████  Further, it includes all youth regardless of how long their placement process takes.  *All* youth who are committed to DYRS will likely be housed at YSC for some period of time before they are transferred to their placement.  Plaintiffs concede as much, suggesting elsewhere that the cut off for an "excessively delayed" placement is 30 days after commitment.  *See, e.g.,* Pls.' Mem. Supp. Mot. Prelim. Inj. [7-1] at 22 ("Plaintiffs and putative class members have waited far longer than 30 days to be placed for rehabilitative services[.]").  Yet Plaintiffs have not provided any evidence at all of the number of youth who are—or will be—awaiting placement at YSC for more than 30 days, for example (or any other defined period of time), or the number of youth whose assessments were not completed by the statutory deadline, let alone evidence that the number for either would be over 40.  *See Wal-Mart Stores*, 564 U.S. at 350 ("A party seeking class certification must affirmatively demonstrate his compliance with the Rule . . . .").  In other words, even if between 96 and 140 youth were committed to DYRS custody each year between 2017 and 2019, and the same were true of subsequent and future years, that says nothing about the number of youth who

could bring the specific claims Plaintiffs raise in their Complaint and who would be entitled to relief if Plaintiffs' claims were meritorious.

Nor can Plaintiffs rely on "unknown future class members who will be committed to DYRS custody and awaiting placement while detained at YSC," Pls.' Mem at 10, to bolster their putative class's numbers, as legislation passed by the D.C. Council on December 17, 2024, would fundamentally alter the legal landscape for justice-involved youth. *See* above, Background II. (discussing the ROAD Act). Relevant here, for example, the new legislation would require initial assessments be conducted within ten days of DYRS receiving notice of a youth's possible commitment, not within three days of the youth's commitment. ROAD Act ¶¶ 160–65. Thus, not only would Plaintiffs' claims for violations of D.C. Code § 16-2319 be moot, as they seek only prospective relief, but clearly there would be no "future class members" who could bring that claim. Similarly, the pending legislation would require a predisposition meeting to review that assessment, the goal of which is to begin the development of the youth's individualized rehabilitation plan. ROAD Act ¶¶ 172–75. Quite simply, Plaintiffs cannot reasonably infer that the timeliness of assessments and placements will continue the same as it has in the past given the substantial pending changes to the law, if enacted. As a result, there is no evidence before the Court that the putative class will in fact continue to grow into the future.

The small number of putative class members is no matter, Plaintiffs say, because joinder is impracticable. Pls.' Mem. at 9. They cite two grounds for this assertion. First, they cite "the unnamed, unknown future class members who will be committed to DYRS custody and awaiting placement while detained at YSC." *Id.* at 10. As discussed above, Plaintiffs cannot rely on future committed youth to satisfy their numerosity burden, due to the pending changes in the law that bear directly on their legal claims. Second, Plaintiffs point to "the financial resources of

class members and the ability of claimants to institute individual suits." *Id.* 9–10 (quoting *Coleman ex rel. Bunn v. District of Columbia*, 306 F.R.D. 68, 80 (D.D.C. 2015)) (internal quotation marks omitted).  But youth committed to DYRS custody are not left without judicial recourse to challenge the fact or circumstances of their detention at YSC.  *See, e.g.*, D.C. Code § 16-2323(h)(1) (allowing committed youth to "petition . . . to modify a dispositional order . . . on the grounds that the child is not receiving appropriate services or level of placement" every six months).[3]  It is not the case that their claims have to "proceed as a class action or not at all," *Coleman*, 306 FRD at 80, as D.C. law gives Plaintiffs grounds to raise the very issues in this case in their individual delinquency proceedings.  *See Lewis v. U.S. Parole Comm'n*, 2024 WL 3566135, at \*13 (D.D.C. July 29, 2024) (noting that "would-be class members['] access to institutional resources such as the Public Defender Service" cuts against numerosity theories based on the difficulty of joinder).  Putative class members are thus not in the position of needing to obtain separate counsel and initiate separate civil litigation in order to get relief.

      **B.**    <u>**Plaintiffs Cannot Establish Commonality Because They Have Not Identified Common Questions Capable of Resolving Any Issues on a Class Wide Basis.**</u>

Most crucially, Plaintiffs have failed to identify a question of law or fact that meets the commonality requirements of Rule 23(a)(2).  To show commonality, Plaintiffs' claims must depend "upon a common contention" and "[t]hat common contention . . . must be of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each of the claims in one stroke." *Wal-Mart Stores*, 564 U.S. at 350.  Thus, "Rule 23(a)(2) is satisfied if *resolution of each*

---

[3]     The ROAD Act would increase the frequency of such petition to once every four months. *See* ROAD Act ¶¶ 266–269.

*plaintiff's claim* turns on a common *question* (or questions) and if common *proof* leads to a common *answer* (or answers) to that question for each plaintiff." *Brown v. District of Columbia*, 928 F.3d 1070, 1081 (D.C. Cir. 2019) (emphasis in original).  Such common questions "must be more specific than simply asking whether plaintiffs 'have all suffered a violation of the same provision of law' because the same provision of law 'can be violated in many different ways.'" *Thorpe v. District of Columbia*, 303 F.R.D. 120, 145 (D.D.C. 2014) (quoting *Wal-Mart Stores*, 564 at 350.  Commonality requires that "class members must have suffered the same injury *for the same reason*, such as a uniform policy or practice that is illegal." *DL v. District of Columbia*, 302 F.RD. 1, 12 (D.D.C. 2013), *aff'd*, 860 F.3d 713 (D.C. Cir. 2017) (emphasis original).  But "Rule 23 does not allow for . . . a 30,000 foot view of commonality." *In re White*, 64 F.4th 302, 314 (D.C. Cir. 2023) (citing *DL v. District of Columbia*, 713 F.3d 120, 126 (D.C. Cir. 2013)).

Plaintiffs argue that all putative class members "present the same challenge to DYRS's policies and practices," Pls.' Mem. at 13 (internal alterations omitted), but this is only true at the sky-high level of generality presented in Plaintiffs' motion.  Plaintiffs define the "system-wide policy or practice" they are challenging as DYRS "not conducting assessments or developing individualized treatment plans of children in a timely manner, and of holding children in a jail-like setting for months on end without purpose." *Id.* at 12.  Plaintiffs' proposed class, however, is not merely limited to youth whose assessments or treatment plans are not completed in timely manner, or to youth who have been held at YSC for any defined period of time, so it is simply not the case that any "uniform policy or practice [ ] affects all class members." *Id.* at 11–12 (citing three cases with the same language).  In other words, Plaintiffs fail to meet the commonality requirement in part because their class definition is overbroad due to including youth who do have timely assessments, and youth who are placed expeditiously.  "Although a

class may contain a '*de minimis*' number of uninjured members, . . . [i]f the [class] definition is so broad that it sweeps within it persons who could not have been injured by the defendant's conduct, it is too broad" to satisfy commonality. *Lewis*, 2024 WL 3566135, at *13 (citations omitted).

But there is more. Plaintiffs' failure to meet the commonality requirement is perhaps most clear when considering Plaintiffs' due process claims. Even assuming Plaintiffs could demonstrate that all putative class members who have awaited placement at YSC for longer than 30 days have suffered a violation of the same provision of law, *Thorpe*, 303 F.R.D. at 145, they cannot show that these violations occurred *for the same reason*, *DL*, 302 F.RD. at 12. And the precise facts, context, and circumstances of an alleged due process violation are essential to state a claim. *See Jordan v. District of Columbia*, 161 F. Supp. 3d 45, 55 (D.D.C. 2016) ("[A] court's consideration of a substantive due process claim demands an exact analysis of the circumstances before any abuse of power is condemned as conscience shocking.") (citation omitted). "Given the intensely fact-based nature of the inquiry, the Supreme Court has chastised courts that have adopted a 'sweeping and categorical' approach to due process." *Daskalea v. Wash. Humane Soc'y*, 275 F.R.D. 346, 360 (D.D.C. 2011) (citing *Gilbert v. Homar*, 520 U.S. 924, 931 (1997)) (denying class certification); *see also id*. at 361 ("The due process inquiry turns in part on the private interest affected by the official action, and the magnitude of the deprivation is of critical significance in the due process calculus.") (citations omitted). And beyond the due process analysis itself, the court must consider whether a custom or practice of the municipality caused the alleged constitutional deprivation, *see Brown v. District of Columbia*, 514 F.3d 1279, 1283 (D.C. Cir. 2008)).

Fatal to Plaintiffs' claim to commonality here, and thus class certification, is that each youth committed to DYRS presents an individualized case—there is no "uniform policy or practice" that accounts for the amount of time it takes to place all youth in DYRS custody held at YSC. *See* Defs.' Opp'n Pls.' Mot. Prelim. Inj. (PI Opp'n) [18-4] at 5–8 (describing the multi-faceted process from commitment to placement); *see also* PI Opp'n, Ex. 1, Decl. of Tracie Velten [18-6] (Velten Decl.), ¶¶ 15, 23–27 (K.Y. specifics); *id.* ¶¶ 16, 28–30 (D.J. specifics); *cf. DL*, 713 F.3d at 128 (holding certified class was overbroad because it was based on "multiple, disparate failures to comply" with the law).[4]  A review of K.Y. and D.J.'s placements proves the point.

█████████████████████████████████████████████

██████████████████████████████████████████

███████████████████████████████████████████████

████████████████████████████████████████████

██████████████████████████████████████████

█████████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████

---

[4]    Plaintiffs' motion, like their motion for a preliminary injunction, also conflates the statutory timeframe for completing initial assessments and case planning for newly committed youth with the placement process, arguing that it is the alleged failure of DYRS to complete initial assessments and case planning in a "timely manner" leads to extended delays in placement. *See, e.g.*, Pls.' Mem. at 3–4, 12.  As the District has noted, however, the initial assessment and case planning processes operate in parallel to the process of identifying and applying for placements for committed youth.  PI Opp'n at 32.  DYRS does not delay the placement process based on incomplete initial assessments or case plans.  Velten Decl. ¶ 18; *see also* Pls.' Mot. to Hold Prelim. Inj. in Abeyance [25] at 2 (arguing that named Plaintiffs' claims are not moot despite being transferred to rehabilitative placements because "Defendants have still not provided them the treatment plans to which they are entitled").



At bottom, not only is each putative class member detained at YSC for a different length of time, the process of determining the reasons any given placement took the length of time that it did—and whether, based on the individual circumstances, that amount of time was unconstitutional, or was even caused by any policy or practice of the District's—necessarily requires evaluating each putative class member's individual case. *See DL v. District of Columbia*, 713 F.3d 120, 128 (D.C. Cir. 2013) ("Although . . . all members of the class are harmed as a result of the systemic deficiencies . . . what common 'true or false' question can be answered . . . that would assist . . . in determining the District's liability as to each group?"). In other words, there is no one question that could be answered and determine whether an

individual's substantive due process claims are "meritorious" that would also determine whether the class's claims are meritorious.  Pls.' Mem. at 13 (quoting *J.D. v. Azar*, 925 F.3d 1291, 1321 (D.C. Cir. 2019).

In an attempt to overcome this, Plaintiffs resort to the impermissible 30,000 foot view of commonality.  *In re White*, 64 F.4th at 314.  Take the three "factual and legal questions" Plaintiffs say demonstrate commonality across the putative class: Plaintiffs ask (1) "[w]hether Defendants have, by excessively delaying placements, violated their duty to provide rehabilitative care and treatment to children in its custody who are awaiting placement," (2) "[w]hether Defendants' excessive delays in assessing and developing plans for children in their custody violate DYRS's statutory command," and (3) "[w]hether Defendants violate the constitutional rights of the children in its custody by extending the length of their detention in secure jail-like settings and failing to provide rehabilitative services."  Pls.' Mem. at 12.  All three presuppose the existence of "excessive delay" and extension of "detention in secure jail-like settings," but sidestep the critical question of what constitutes an excessive delay, and whether there is any common *cause* for such alleged delays.  *See id*.  Because of these essential predicate questions, which are highly individualized and go directly to the District's liability, it is simply not possible for the Court to answer Plaintiffs' questions in a way that would resolve all of the putative class members' claims with "one stroke."  *Wal-Mart Stores*, 564 U.S. at 350.

Further, in order for the Court to resolve at least Plaintiffs' first and third proffered common questions on a class-wide basis, it would have to first determine the constitutional standard for the amount of time that any particular post-commitment youth can be detained at YSC awaiting placement.  Given that some amount of time awaiting placement is inevitable, not all youth in the custody of DYRS, in YSC, and awaiting placement share these common

questions.  Rather, the Court would have to determine what constitutes an "excessive delay"—
meaning unconstitutional delay—and then whether any given youth *has suffered* excessive delay,
before turning to the questions posed by Plaintiffs.  And it is far from certain that the Court
would answer those questions the same way for every putative class member, given the factual
differences that lead to the length of their detentions before placement, the reasons for any delay,
and what actions DYRS takes to facilitate placement, mitigate the delay, and provide services to
youth at YSC in the interim.

What this amounts to, then, is precisely the problem the Supreme Court identified in *Wal-
Mart*: there is "no common *proof* leading to a common *answer* to the common *question at the
heart of each plaintiff's claim*."  *Brown*, 928 F.3d at 1080 (emphasis in original).  And Plaintiffs
must meet this burden with "significant proof" or "significant evidence" that a common policy or
practice exists which "has consistently and uniformly injured the putative class members," a
higher standard than mere "preponderance."  *Hoyte*, 325 F.R.D. at 492.  Plaintiffs have failed to
do so.

C.   **Plaintiffs Cannot Establish Typicality Because Their Claims Are
     Insufficiently Similar to the Other Putative Class Members.**

Plaintiffs also cannot establish typicality as required under Rule 23(a)(3).  The central
purpose of the typicality requirement is to ensure that class members and the named plaintiffs
have claims "sufficiently similar so that the representatives' acts are also acts on behalf of, and
safeguard the interests of, the class."  *Littlewolf v. Hodel*, 681 F. Supp. 929, 935 (D.D.C. 1988),
*aff'd sub nom.*, *Littlewolf v. Lujan*, 877 F.2d 1058 (D.C. Cir. 1989); *see also Stewart v. Abraham*,
275 F.3d 220, 227 (3d Cir. 2001) ("The typicality inquiry centers on whether the interest of the
named plaintiffs align with the interests of the absent members."); *Broussard v. Meineke Disc.
Muffler Shops, Inc.*, 155 F.3d 331, 340 (4th Cir. 1998) (quoting *Sprague v. General Motors*

*Corp.*, 133 F.3d 388, 399 (6th Cir. 1998)) ("The premise of the typicality requirement is simply stated: as goes the claim of the named plaintiff, so go the claims of the class.").

For the typicality requirement, "the claims or defenses of the representative parties [must be] typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). "[T]ypicality is ordinarily met 'if the claims or defenses of the representatives and the members of the class stem from a single event or a unitary course of conduct, or if they are based on the same legal or remedial theory.'" *J.D. v. Azar*, 925 F.3d 1291, 1322 (D.C. Cir. 2019) (quoting 7A Wright *et al.*, Federal Practice and Procedure § 1764). "Typicality means that the representative plaintiffs must possess the same interest and suffer the same injury as the other class members." *Damus v. Nielsen*, 313 F. Supp. 3d 317, 331 (D.D.C. 2018) (citing *Gen. Tel. Co. of SW v. Falcon*, 457 U.S. 147, 156 (1982)).

As noted above, the claims of the named Plaintiffs are in fact distinct even from each other, let alone the remainder of the class—all other youth awaiting placement for any period of time regardless of whether or not they received timely assessments.



Thus, it is not clear whether either has adequately alleged a violation of D.C. Code § 16-2319 at all—and therefore be typical of—any defined class of

individuals with such a claim.  This case therefore is distinguishable from those which found mere "factual variations between the claims of class representatives and the claims of other class members" which "do not negate typicality."  Pls.' Mem. at 13 (quoting *Bynum v. District of Columbia*, 214 F.R.D. 27, 34 (D.D.C. 2003)).

There are key differences, too, in the ultimate placements of named Plaintiffs and all potential members of the putative class that preclude typicality. ████████████████████ ████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████

These differences are not merely cosmetic.  For instance, the District itself operates one RTC, but there are no PRTFs in the District, so youth for whom a PRTF is the appropriate placement faces a unique set of challenges, including approval from the receiving jurisdiction.  Velten Decl. ¶¶ 10, 11, 21.  Similarly, youth who require placement in a PRTF require a current, qualifying mental health diagnosis, as well as a recommendation in writing from a psychiatrist.  *Id*. ¶ 11. And even beyond the differences between *types* of placements, the very placements themselves may require different information or evaluations, even among the same category of placement. *See id*. ¶ 12.

So, while the named Plaintiffs may have an interest in challenging DYRS's policies and practices which are required for the particular placements they were recommended, they *lack* an interest in challenging those policies and practices governing the other class members, whose needs require different placements. ████████████████████████ ████████████████████████████████████████



Finally, the fact that the underlying statutory regime governing placements is in the process of being revised heavily cuts against typicality, because neither named Plaintiff is a "typical" representative of a class of youth awaiting placement who may wish to challenge DYRS's implementation of the new statutory system, as neither of them spent any time at YSC under that system in the first place.  *See Hinton*, 567 F. Supp. 3d at 48 n.8.

The unique differences in K.Y. and D.J.'s cases here are not merely factual but strike at the core of Plaintiffs' legal theories as to whether and how Plaintiffs' asserted right to be timely placed was violated or not.  Because other class members' theories of harm will necessarily rely on different facts and circumstances, and will face different defenses, typicality cannot be established.

> **D.**    **Plaintiffs Cannot Adequately Serve as Class Representatives Because They Lack Incentive To Protect the Interests of the Class.**

Finally, Plaintiffs cannot establish that they are adequate class representatives.  Adequacy requires that Plaintiffs "fairly and adequately protect the interests of the class."  *DL v. District of Columbia*, 860 F.3d 713, 726 (D.C. Cir. 2017) (quoting *Amchem Prods., Inc.*, 521 U.S. at 625). This means that Plaintiffs (1) "must not have antagonistic or conflicting interests with the

unnamed members of the class," and (2) "must appear able to vigorously prosecute the interests of the class through qualified counsel." *J.D. v. Azar*, 925 F.3d 1291, 1312 (D.C. Cir. 2019). Plaintiffs argue that they meet the adequacy requirement for class certification because they have no "conflicts of interest with the putative class." Pls.' Mem. at 25. That may be true, but only because they have no interest at all in the outcome of the litigation. *See Lewis v. Becerra*, 111 F.4th 65, 71–72 (D.C. Cir. 2024).

Plaintiffs are not adequate representatives as their claims are—or may very soon be— moot because "an intervening circumstance deprive[d] them of a personal stake in the outcome of the lawsuit." *J.D.*, 925 F.3d at 1307. Specifically, Plaintiffs seek only prospective injunctive relief, ██████████████████████████████████████████████████ and the statutory timelines for completing assessments and individualized treatment plans that they challenge have been changed by pending legislation. *See Am. Bar Ass'n v. FTC*, 636 F.3d 641, 643 (D.C. Cir. 2011) ("It is well established that a case must be dismissed as moot if new legislation addressing the matter in dispute is enacted while the case is still pending.").

Further, Plaintiffs cannot rely on the "inherently transitory" exception to mootness here. The "inherently transitory" exception applies when (1) "the individual claim might end before the district court has a reasonable amount of time to decide class certification" and (2) "some class members will retain a live claim at every stage of litigation." *J.D.*, 925 F.3d at 1311. Even if they could satisfy the first prong, as noted above, the D.C. Council passed legislation in December 2024 that will substantially change the legal landscape governing DYRS in specific ways relevant to Plaintiffs' claims—including the statutory timeline and substantive requirements for completing assessments developing individualized treatment plans. *See* ROAD Act ¶¶ 160–83. If the legislation takes effect, Plaintiffs will be unable to meet the second

requirement because *no* class member will retain a "live claim," as no putative class members will remain held by DYRS under the specific D.C. laws that Plaintiffs' claims, including their Constitutional claims, rely on. *See, e.g.*, Compl. ¶¶ 86, 101. Rather, at that point, if Plaintiffs or putative class members believe the District is violating the new legal requirements, their recourse will be to file a new suit advancing those claims specifically. *See Hinton*, 567 F. Supp. 3d at 46–47 (denying a motion for class certification without prejudice in the adult pretrial detention context after a revised policy was passed addressing the plaintiff's claims).[6]

Moreover, Plaintiffs have not met their burden to demonstrate that they understand, and will fulfill, the obligations of class representatives. Neither of them submitted a declaration stating what they understand those responsibilities to be, let alone attesting to their ability to carry them out. Quite simply, there is no evidentiary basis for the Court to find that Plaintiffs have "demonstrated a commitment to their role as class representatives and have a sufficient 'awareness of the facts of case' to satisfy the adequacy factor." Pls.' Mem. at 15 (quoting *Garnett v. Zeilinger*, 301 F. Supp. 39, 199, 211 (D.D.C. 2018)). Plaintiffs are therefore not adequate representatives.[7]

## II. Certification Is Improper Under Rule 23(b)(2) Because Plaintiffs Have Not Established That Class-Wide Injunctive Relief Can Address Their Alleged Injuries.

Separately, Plaintiffs' proposed class does not qualify under Rule 23(b)(2). A Rule 23(b)(2) class is appropriate where "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding

---

[6]    As the District notes above and below, Plaintiffs' current motion fails on multiple independent other grounds as well, which also bars application of the inherently transitory exception and renders the named Plaintiffs' claims moot. *Hinton*, 567 F. Supp. at 47 ("So if there is no certifiable class, the inherently transitory exception to mootness *a fortiori* cannot apply.").

[7]    The District does not challenge the qualifications of Plaintiffs' counsel.

declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2). This requires two separate showings. First, the plaintiff must show that the class is "sufficiently cohesive that any classwide injunctive relief can satisfy the limitations of Federal Rule [of] Civil Procedure 65(d)—namely, the requirement that [the injunction] 'state its terms specifically; and describe in reasonable detail . . . the act or acts restrained or required.'" *Shook v. Bd. of Cnty. Comm'rs of Cnty. of El Paso*, 543 F.3d 597, 604 (10th Cir. 2008) (Gorsuch, J.) (quoting Fed. R. Civ. P. 65(d)(1)); *see also Maldonado v. Ochsner Clinic Found.*, 493 F.3d 521, 524 (5th Cir. 2007) (injunctive relief sought under Rule 23(b)(2) "must be specific"). Second, the plaintiff must show that "relief specifically tailored to each class member would [not] be necessary to correct the allegedly wrongful conduct of the defendant." *Shook*, 543 F.3d at 604 (quoting 5 Moore's Fed. Practice § 23.43(2)(b) at 23-195 (3d 2000)). That is because "Rule 23(b)(2) applies only when a single injunction or declaratory judgment would provide relief to each member of the class." *Wal-Mart Stores*, 564 U.S. at 360. Plaintiffs here have failed to make both showings.

Plaintiffs' Complaint seeks an injunction requiring that the District (1) comply with the timeline for initial assessments and individualized treatment plans set out in D.C. Code § 16-2319, and (2) ensure "prompt placement" of youth outside of YSC; as well as (3) a declaration that the District's "failure to timely place children in appropriate placements" is unlawful. Compl. at 33–34; *see also* Pls.' Mem. at 16–17 (describing "injunctive relief that would require the Defendants to meet the rehabilitative needs of children in [DYRS's] custody by identifying and providing youth with placements and ceasing [its] practice of needlessly extending

children's time in restrictive, secure settings.").[8]  This proposed injunctive relief cannot satisfy Rule 65(d) because it is both overly vague and would require relief specifically tailored to each putative class member.

### A.    Plaintiffs' Requested Injunction Is Impermissibly Vague.

First, Plaintiffs' requested relief fails to meet the requirements of Rule 65(d), which provides that any injunction issued by a court must "state the reasons why it issued," "state its terms specifically," and "describe in reasonable detail—and not by referring to the complaint or other document—the act or acts restrained or required."  Fed. R. Civ. P. 65(d)(1).  As the Supreme Court has emphasized, "the specificity provisions of Rule 65(d) are no mere technical requirements," but rather are "designed to prevent uncertainty and confusion on the part of those faced with injunctive orders, and to avoid the possible founding of a contempt citation on a decree too vague to be understood."  *Schmidt v. Lessard*, 414 U.S. 473, 476 (1974) (citing *Int'l Longshoremen's Ass'n v. Philadelphia Marine Trade Ass'n*, 389 U.S. 64, 74-76 (1967)).  The rule both promotes "basic fairness" by requiring "explicit notice of precisely what conduct is outlawed," and facilitates judicial review by ensuring an appellate court will "know precisely what it is reviewing."  *Id.* at 476–77.  For instance, "injunctions simply requiring the defendant to obey the law are too vague to satisfy Rule 65."  *Shook*, 543 F.3d at 604 (quoting *Monreal v. Potter*, 367 F.3d 1224, 1236 (10th Cir. 2004)); *accord S.E.C. v. Wash. Inv. Network*, 475 F.3d 392, 407 (D.C. Cir. 2007) (rejecting injunction against "future violations of" specified statutory provisions as "insufficiently specific").

---

[8]    Plaintiffs also seek an injunction requiring the District to provide the Family Court with a "plan for placement" prior to the disposition hearing, but this does not appear to be tethered to any claim or any legal requirement.  Compl. at 34.

An injunction ordering DYRS to place all youth committed to DYRS custody at an appropriate rehabilitative placement "promptly," Compl. at 34, is too broad and nonspecific to meet this requirement. *See Atwell v. Gabow*, 248 F.R.D. 588, 596 (D. Col. 2008) (finding that an order prohibiting defendants from violating federal anti-discrimination laws does not support certification under 23(b)(2)); *see also Wash. Inv. Network*, 475 F.3d at 407 (finding that an order enjoining defendants from future violations of specific statutory provisions did not satisfy Rule 65(d)). Plaintiffs have not defined "prompt placement" nor offered any explanation or proposal for how compliance with a requirement to provide "prompt placement" could be measured given the multitude of individualized factors that contribute to the length of time it takes to place any given youth. For example, if DYRS successfully makes a referral for a youth in its custody within ten days, but the placement facility does not have capacity to receive that youth within 30 days, it is unclear not just whether DYRS has violated the proposed injunction, but what it could be ordered to do to come within compliance, short of backing out of the placement to re-start the process in hopes of getting an acceptance to a placement with sooner availability (and even that could not guarantee "compliance"). Similarly, if the Article VI or ICPC process, which are required for placements outside the District, cause delays in placement, *see* Velten Decl. ¶¶ 20, 21, the District—and the Court—face the difficult circumstance in which compliance with this Court's injunction is reliant on parties that are outside this Court's jurisdiction, such as the actions of the Superior Court, or other sovereign states. In short, Plaintiffs have identified what they allege is a problem affecting some youth, and asked this Court to order the District to fix it—without identifying the alleged problem with any specificity and completely eliding what a "fix" would entail for each putative class member, and whether or not the District has the ability

to implement that "fix." That does not satisfy the requirements of Rule 65(d), and thus the class should not be certified under Rule 23(b)(2).

      **B.**    <u>**An Injunction Would Require Individually Tailored Relief.**</u>

Plaintiffs also cannot show that an injunction would remedy their alleged injuries without "relief specifically tailored to each class member." *Shook*, 543 F.3d at 604. To the contrary, any injunctive relief in this case would require "time-consuming inquiry into individual circumstances or characteristics of class members or groups of class members," *id.*, ultimately leading to individualized, not class-wide, relief. The cases of the named Plaintiffs, discussed above, demonstrate that each putative class member faces multiple, different challenges during the placement process. Given this, the Court would need to determine whether a constitutional or statutory violation occurred in every individual case, considering not just the length of time spent awaiting placement, but the challenges leading to delay in placement and what steps, if any, DYRS took to mitigate harm to the youth. A putative class claim does not meet the requirements of Rule 23(b)(2) if the sought injunctive relief "would merely initiate a process through which highly individualized determinations of liability and remedy are made." *In re Navy Chaplaincy*, 306 F.R.D. 33, 56 (D.D.C. 2014) (quoting *Jamie S. v. Milwaukee Pub. Schs.*, 668 F.3d 481, 498–99 (7th Cir. 2014)). Such "relief would be class-wide in name only, and it would certainly not be final." *Id.* (quoting *Jamie S.*, 668 F.3d at 498–99).

Thus, unlike the traditional (b)(2) class, where the focus "is more heavily placed on the nature of the remedy sought" and "the identities of individual class members are less critical," *J.D.*, 925 F.3d at 1320 (quoting *Shelton v. Bledsoe*, 775 F.3d 554, 561 (3d Cir. 2015)), here, the identities of individual class members are essential. The Court must consider the specifics of each putative class member's case to determine whether the District has in fact violated any of

their rights, and if so, what relief is due.  Whereas in *Brown v. District of Columbia*, the D.C.

Circuit observed that "[i]f a certain outcome is legally mandated and an injunction provides each

member of the class an increased opportunity to achieve that outcome, Rule 23(b)(2) is

satisfied," 928 F.3d at 1082, there is no legally mandated time frame for placement of youth after

commitment, and no indication that the injunction Plaintiffs seek would decrease the time

awaiting placement.

Plaintiffs come closer to being able to meet the requirements of Rule 65 regarding their

request for an injunction ordering DYRS to comply with the timeline for initial assessments and

individualized treatment plans set out in D.C. Code § 16-2319, but still cannot show entitlement

to class certification on those limited grounds for the reasons discussed above.  First, they have

not established a sufficiently numerous class of committed youth whose initial assessments and

individualized treatment plans were not completed on the statutory timelines.  *See* above, Arg.

§ I.A (discussing the numerosity requirement).  This is especially true, given provisions of the

ROAD Act that would fundamentally change these requirements and their accompanying

timelines, such that Plaintiffs could not supplement their class with unknown future members.

*See* above, Background § II.  And, as also discussed above, the placement process happens in

parallel with, not subsequent to the assessment and case planning processes, such that

completing assessments more quickly will not necessarily lead to placements being made more

quickly.  *See* above, n.4.  In other words, there is thus no link between the alleged statutory

violations and any "delay" in placement such that an injunction requiring the District to comply

with D.C. Code § 16-2319(f) would "provide[ ] each member of the class an increased

opportunity" to achieve the desired outcome.  *Brown*, 928 F.3d at 1082.  And without such a

link, certification under Rule 23(b)(2) cannot be maintained, and the motion should be denied.

C.     **Plaintiffs' Proposed Preliminary Injunctive Relief**

Finally, Plaintiffs' proposed preliminary injunctive relief would, separately, be inappropriate under Rule 23(b)(2).  In December 2024, Plaintiffs asked the Court to hold their motion for preliminary injunctive relief in abeyance pending a decision on their motion for class certification.  Mot. to Hold Pls.' Mot. for Prelim. Inj. in Abeyance [25]; Dec. 17, 2024 Minute Order granting Pls.' Mot. [25] (holding preliminary injunction motion in abeyance pending briefing on class certification).[9]  Plaintiffs' proposed order for preliminary injunction seeks an order that youth in DYRS custody be "moved to placements that meet their rehabilitative needs," within 30 days of commitment, or on tiered time frames based on how long they have been in DYRS custody.  *See* Prelim. Inj. Proposed Order [7-13] at 1–2.  This may be less vague on its face than the relief sought in the Complaint, but Plaintiffs offer no legal basis for their choice of time frame—no evidence of best practices, evidence of typical practices in other states, or expert testimony—only the aspirational statements of the agency's director.  *See, e.g.*, Pls.' Mem. Supp. Prelim. Inj. [7-1] at 8 (referencing Director Abed's statement that "all children should be placed within, *ideally*, 30 days of commitment" (emphasis added)); Pls.' Reply Supp. Prelim. Inj. [19] at 11 (arguing, without any legal support, that Director Abed's statements "reflect a 'professional judgment'" that the District has "substantially departed from," violating due process).

And not only is there no legal support for a 30 day standard, in fact, the D.C. Council recently *explicitly rejected* creating a statutory requirement that DYRS "provide services consistent with an individualized rehabilitation plan . . . within 30 days after entry of a disposition order," finding that due to "challenges in finding appropriate placements," including

---

[9]     Should the Court grant Plaintiffs' motion for class certification, the District requests an opportunity for additional briefing on the motion for a preliminary injunction to address changes to the facts and law in this case that have occurred since the District filed its opposition.

factors outside the District's control, it was "not clear" that such a requirement "would have led to quicker placements." *See* Memorandum: Notice of Intent to Move Amendment in the Form of a Substitute from Phil Mendelson, Chairman, D.C. Council (Dec. 16, 2024), *available at* https://lims.dccouncil.gov/downloads/LIMS/55504/Meeting3/Amendment/B25-0826-Amendment1.pdf?Id=204043 (last visited Jan. 10, 2025). In sum, Plaintiffs' vague and unsupported proposed preliminary injunctive relief would hinder, not help, DYRS in its mission to provide the appropriate placements for the various youth committed to its care. Thus, although the requested preliminary injunctive relief requested is more specific than what is sought in the Complaint, it does not meet the requirements for certifying a class under Rule 23(b)(2). The motion should therefore be denied.

## CONCLUSION

For these reasons, the Court should deny Plaintiffs' Motion for Class Certification and Appointment of Class Counsel.

Dated: January 10, 2025.                          Respectfully submitted,

                                                  STEPHANIE E. LITOS
                                                  Deputy Attorney General
                                                  Civil Litigation Division

                                                  */s/ Matthew R. Blecher*
                                                  MATTHEW R. BLECHER [1012957]
                                                  Chief, Equity Section

                                                  */s/ Honey Morton*
                                                  HONEY MORTON [1019878]
                                                  Assistant Chief, Equity Section

*/s/ Amanda C. Pescovitz*
AMANDA C. PESCOVITZ [1735780]
BRENDAN HEATH [1619960]
Assistant Attorneys General
400 6th Street, NW
Washington, D.C. 20001
Phone: (202) 805-7495
Email: amanda.pescovitz1@dc.gov

*Counsel for Defendants*